JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

DANIEL R. KALEBA (CABN 223789)
Assistant United States Attorney

   1301 Clay Street, Suite 340S
   Oakland, California 94612
   Telephone: (510) 637-3680
   Facsimile: (510) 637-3724
   E-Mail: daniel.kaleba@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JULIO FAMIGLIETTI<br><br>    Defendant, and<br><br>SANDRA S. FAMIGLIETTI,<br>ALESSANDRA FAMIGLIETTI,<br>CLAUDIA FAMIGLIETTI, and<br>GULIO FAMIGLIETTI,<br><br>    Sureties. | Case Nos.  CR-07-70128 WDB<br>                 CR-07-0471-DLJ<br>                 H-07-211 M<br><br>NOTICE OF MOTION AND MOTION FOR FORFEITURE OF BOND AND JUDGMENT AGAINST DEFENDANT; MOTION FOR ENFORCEMENT OF SURETIES'S OBLIGATION<br><br>Date and Time: To Be Set |

PLEASE TAKE NOTICE THAT, pursuant to Rule 46(f) of the Federal Rules of Criminal Procedure, on a date and time to be set by this Court, the United States will seek: (1) forfeiture of bond in the amount of $250,000 executed by the defendant Julio Famiglietti on or about March 15, 2007; (2) entry of judgment against the defendant for that amount; and (3) an order from the Court enforcing the obligation of the sureties on the bond. A copy of the bond (the "Bond") is attached as Exhibit A to this Motion, and incorporated herein by reference.

1

Rule 46(f)(3)(C) of the Federal Rules of Criminal Procedure requires the United States to serve this motion, and notice prescribed by the Court, on the district clerk. If so served, the clerk must promptly mail a copy to the surety at his last known address.

## A.   Grounds for Forfeiture of Bond and Judgment Against the Defendant.

The defendant, Julio Famiglietti, is a fugitive wanted in United States federal districts in Texas and California, as well as the state of Texas, to face charges arising out of the defendant's possession of child pornography. He willfully disobeyed this Court's pretrial release order by: (1) never appearing before the federal court in Texas; (2) not returning to his Oakland, California, halfway house placement; and (3) not subsequently submitting to Pretrial Services's supervision. The defendant is a fugitive, and his current whereabouts are unknown.

The grounds for forfeiture of bond and judgment against the defendant are that the defendant breached the conditions of his bond and pretrial release, as follows:

1. On or about March 1, 2007, the defendant, Julio Famiglietti, was charged by criminal complaint by the United States District Court for the Southern District of Texas with violations of 18 U.S.C. §§ 2252A(a)(1) and 2252A(a)(5)(B) to knowingly mail, transport or ship in interstate or foreign commerce by any means, including by computer, child pornography and did knowingly possess images of child pornography that had been mailed, or shipped or transported in interstate commerce by any means, including by computer. A warrant for the defendant's arrest was issued on that date by the same Texas federal court. (Pretrial Services Officer Gibson's Petition for Arrest Warrant and Supporting Affidavit ("Pretrial Petition"), attached as Exhibit B to this Motion, at ¶ 1.)

2. The defendant initially appeared before this Court on March 5, 2007, and on March 15, 2007, this Court ordered his release on a $250,000 bond secured by the defendant's, and his wife's, property. (Bond at 1.) The defendant's wife, Sandra Famiglietti, and adult children, Alessandra Famiglietti, Claudia Famiglietti, and Gulio Famiglietti, also signed as sureties to the bond. (*Id.* at 1-2.) Defendant was ordered to comply with numerous release conditions, including submitting to Pretrial Services's supervision, residing at a halfway house (Cornell Corrections in Oakland, California), and surrendering his United States, Panamanian, and Italian passports. (*Id.*) The defendant was also ordered to report to the United States District Court for the Southern District of Texas before Magistrate Judge Botley when summoned by that court. (March 16, 2007 Order, attached as Exhibit C to this Motion.)

3. The defendant was authorized to leave Cornell Corrections on March 27, 2007, for two days to attend state and federal court hearings in Texas, and was required by Pretrial Services to return by midnight of March 29, 2007. The defendant's wife, Sandra Famiglietti, was to travel with the defendant,

and on March 21, 2007, she provided Pretrial Services Officer Gibson with a passenger itinerary for herself and the defendant. According to the itinerary, both the defendant and Ms. Famiglietti were flying on Southwest Airlines from Oakland to Houston, Texas,, on March 27, 2007. They were scheduled to return, with a connecting flight through Phoenix, Arizona, on March 29, 2007 at 23:00 hours. (Pretrial Petition at ¶ 3.)

4. On March 30, 2007, Cornell Corrections advised Officer Gibson that the defendant had not returned to the facility. (Pretrial Petition at ¶ 4.) Officer Gibson contacted Stanley Schneider, the defendant's attorney for the state court matter in Texas, who reported that he last saw the defendant when he left the Harris County courthouse on March 29, 2007. (*Id.* at ¶ 5.) Officer Gibson contacted the defendant's wife, Sandra Famiglietti, concerning the defendant's whereabouts. She reported that she cancelled her flight to Houston and did not accompany her husband as planned. She advised that she last heard from the defendant on March 29, 2007, at approximately 10:30 a.m. (*Id.* at ¶ 6.)

5. On or about March 30, 2007, Officer Gibson petitioned for the defendant's arrest, and on or about April 2, 2007, the arrest warrant was signed and filed by this Court. (Pretrial Petition at p. 3.)

6. On or about July 19, 2007, the defendant was indicted by the Grand Jury of the Northern District of California for one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), and one count of contempt of court in violation of 18 U.S.C. § 401(3), arising out of the defendant's failure to reside at the Cornell Corrections facility pending trial in the Southern District of Texas, and that he return to Cornell Corrections by midnight on March 29, 2007.

7. The defendant is currently a fugitive. On March 29, 2007, the defendant boarded the first leg of the return flight from Houston to Phoenix. The defendant checked in for the Phoenix to Oakland segment of the flight, but never boarded. This is the last known contact of the defendant in the United States. The defendant, coincidentally, had an adult son (not a surety) living at the time in Phoenix.

8. On April 27, 2007, the United States discovered that the defendant requested travel documents from the Panamanian Embassy in Mexico City, Mexico. May 8, 2007, the defendant received a new Panamanian passport from the Embassy in Mexico City. The defendant entered Panama sometime in May, 2007. His present whereabouts are unknown.

9. On April 13, 2007, the United States discovered that Sandra Famiglietti withdrew $12,000 in cash from the Walnut Creek credit union account she shared with the defendant. On May 23, 2007, Sandra Famiglietti traveled to Panama. Ms. Famiglietti also traveled to Mexico City on July 11, 2007, September 25, 2007, and December 18, 2007.

By absconding from Cornell Corrections halfway house and from Pretrial Services's supervision, as well as disobeying this Court's Order that he appear before the Southern District of Texas when summoned, the defendant violated the conditions of his bond that he shall appear at all proceedings as ordered by the Court, report in person

3

immediately upon release and thereafter as directed to Pretrial Services in Oakland, California, and not change his residence without prior approval of Pretrial Services.

Further, pursuant Rule 46(f)(3)(C) of the Federal Rules of Criminal Procedure, and by reason of the defendant having violated the conditions of his bond as alleged herein, the United States seeks to enforce the obligation of the sureties on the bond, Sandra Famiglietti, Alessandra Famiglietti, Claudia Famiglietti, and Gulio Famiglietti, by entering judgment in the amount of $250,000 against these sureties.

### B. Legal Authority for Forfeiture of Bond and Entry of Judgment.

"The law on bail forfeiture is neither complex nor voluminous." *United States v. Nguyen*, 279 F.3d 1112, 1115 (9th Cir. 2002). Rule 46(f)(1) of the Federal Rules of Criminal Procedure provides that "[t]he Court must declare the bail forfeited if a condition of the bond is breached." Forfeiture is mandatory. *Nguyen*, 279 F.3d at 1115. Forfeiture of bail may be ordered for breaches of conditions of pretrial release as well as a failure to appear. *United States v. Vaccaro*, 51 F.3d 189, 192-93 (9th Cir. 1995).

Although a declaration of forfeiture is mandatory, the district court may set aside in whole or in part a bail forfeiture upon any condition the court may impose if "it appears that justice does not require bail forfeiture." Fed. R. Crim. P. 46(f)(2) and (f)(4). The decision whether to set aside or remit a forfeiture rests within the sound discretion of the court. *United States v. Frias-Ramirez*, 670 F.2d 849, 852 (9th Cir. 1982). If the Court does not set aside a bail forfeiture, the Court "must, upon the government's motion, enter a default judgment." Fed. R. Crim. P. 46(f)(3)(A).

### C. Motion for Forfeiture of Bond and Judgment Against the Defendant.

On March 15, 2007, the defendant executed a bond in the amount of $250,000, specifying conditions of pretrial release. The bond clearly and unequivocally sets forth the consequences of defendant's failure to obey the conditions of release, as follows:

> Payment of the full amount of this bond shall be due forthwith, and all cash or property posted to secure it shall be forfeited. Judgment may be entered and executed against defendant and all sureties jointly and severally.

(Bond at 1.)

Here, the defendant has willfully breached the conditions of his bond. Accordingly, the "court must declare the bail forfeited . . ." Fed. R. Crim. P. 46(f)(1). Pursuant to the terms of the bond, the full amount of the bond is due forthwith from the defendant.

### D. Motion for Enforcement of the Sureties's Obligation.

A surety has one simple obligation – to assure the defendant's appearance when promised. *Nguyen*, 279 F.3d at 1116. The sureties collectively failed in this obligation.

Rules 46(f)(3)(B) and (C) provide for enforcement of a bond that has been forfeited against a surety. By entering into a bond, a surety submits to the district court's jurisdiction and irrevocably appoints the district court clerk as its agent to receive service of any filings affecting its liability. Fed. R. Crim. P. 46(f)(3)(B). The district court may, upon the government's motion, enforce the surety's liability without an independent action. "The government must serve any motion, and notice as the court prescribes, on the district clerk. If so served, the clerk must promptly mail a copy to the surety at its last known address." Fed. R. Crim. P. 46(f)(3)(C).

#### 1. The Defendant's Halfway House Placement Was Conditioned on the Wife's and Adult Children's Agreement to Sign as Sureties.

Due to the nature of the charges and the substantial number of still and video images of child pornography in the defendant's possession, as well as the defendant's international connections in Italy and Panama, the United States sought the defendant's pretrial detention. This Court recognized that there clearly was a risk that the defendant could flee or re-offend, and wanted "all these family members to be exposed to the risk." (March 15, 2007 Bond Hearing (the "Bond Hearing") at 10:15-18, attached as Exhibit D to this Motion.) This Court ordered the defendant's halfway house placement on the condition that the defendant's wife, two adult daughters and the local adult son sign as sureties, and that the defendant and his wife post the property. (March 7, 2007 Detention Hearing (the "Detention Hearing") at 14:24 - 15:10, attached as Exhibit E to this Motion.)
//

**2.    The Sureties Were Advised of the Consequences if the Defendant Fled.**

This Court unambiguously advised the defendant's wife and adult children about the risk of being a surety, and the consequences to the sureties if the defendant fled. This Court instructed the sureties:

> Abusing people who are powerless is not cool. So someone who's got an addiction that – that permits himself to do that, probably with all kinds of rationalizations, but permits himself to do that might permit himself to flee or hide and hurt you, with all kinds of rationalizations. If he flees or hides, he hurts you, each one of you, to the tune of $250,000. If he possesses or tries to possess or tries to transmit child pornography, each one of – that's a crime, a serious one. Each one of you owes $250,000. So if his addiction leads him to recommit or to get afraid and try to hide or flee the country or do something like that, then each of you owes the money.

(Bond Hearing at 13:6-19; *see also* 15:3-13.)

This Court also advised the individual sureties that the defendant would be placed in a halfway house, not a jail. (Bond Hearing at 14:17-24.) Unlike a jail, there would not be guards at the halfway house to ensure his custodial status, and the defendant would have the physical capacity to flee. (*Id*.)

Each surety, being forewarned by the Court of the risk involved in becoming a surety, affirmed its understanding of the consequences if the defendant would not fully comply with the conditions of his release, and executed the bond. *Nguyen*, 279 F.3d at 1117. Above each surety's signature on the bond, the surety also acknowledged reading and understanding the terms of the bond. Each surety acknowledged being bound by the bond until each was "duly exonerated." (Bond at 1.)

The defendant has now materially breached the conditions of his release, thus triggering the sureties's liability on the bond. The United States seeks an order from the Court enforcing the obligation of the sureties on the bond.

**3.    Set Aside or Remission of the Bond Is Not Justified in this Case.**

When there is a request to set aside or remit the forfeiture of the bond, the district court's decision is guided by six factors: (1) the defendant's willfulness in breaching a release condition; (2) the sureties's participation in apprehending the defendant; (3) the

cost, inconvenience, and prejudice suffered by the government; (4) mitigating factors; (5) whether the surety is a professional or a member of the family or a friend; and (6) the appropriateness of the amount of the bond. *Id.* at 1115-16. These factors are not exclusive, and not all of the factors need to be resolved in the government's favor. *Id*.

In *Nguyen*, the Ninth Circuit affirmed the district court's declination to remit or set aside forfeiture of the $100,000 bond against the family member sureties arising out of the defendant's failure to voluntarily surrender after his conviction. *Id.* at 1115. The defendant postponed his surrender date for approximately three weeks by scheduling unnecessary medical procedures, and evading pretrial services by leaving after-hours messages, not residing where he said he would, and avoiding personal visits. *Id.* at 1114-15. The court determined that the balancing factors weighed heavily in favor of the United States, and declined to remit. *Id.* at 1116.

In particular, the court concluded that the two sureties, his sister-in-law and brother-in-law, not only failed to assist, but also acted to hinder the defendant's apprehension. *Id.* The court noted that the sureties have the duty to the court to discover whether the defendant was in violation of the bond requirements. *Id.* The brother-in-law failed to correct the deception to the court that the defendant resided with him, even after the United States Marshals arrived at the residence looking for the defendant. *Id.* The sister-in-law, also the defendant's attorney, filed multiple motions to stay the surrender, and despite frequent contact with the defendant, did nothing to assure his presence. *Id.* The district court concluded that the sureties's nonprofessional status was unpersuasive in light of the defendant's conduct and the sureties's complicity in the evasion. *Id.* at 1117. The court recognized that the sureties entered the bonding agreement aware of the consequences, and declined to adopt a "loving relative" exception to its bond forfeiture jurisprudence, noting that a loving relative "would be better advised to counsel her fugitive relation to obey, rather than ignore, court orders." *Id.* at 1117 n.2.

Here, like in *Nguyen*, no reasonable basis exists to set aside or remit the forfeiture of the bond. First, the defendant's willful flight and continuing fugitive status blatantly

7

violates this Court's pretrial Order.  Nguyen delayed his detention by several weeks; the defendant here remains a fugitive since March 30, 2007.

Second, the sureties have provided no cooperation or assistance in apprehending the defendant.  The wife's conduct leading up to the defendant's flight is especially troubling.  Sandra Famiglietti represented to Pretrial Services that she would accompany the defendant from California to Texas for the court appearances, and return with the defendant to Oakland. (Pretrial Petition at ¶ 3.)  Prior to their departure, Ms. Famiglietti also provided Officer Gibson their joint travel itinerary.  (March 21, 2007 Passenger Itinerary for Julio and Sandra Famiglietti, attached as Exhibit F to this Motion; *see also* March 26, 2007 Fax re Travel Confirmation, attached as Exhibit G to this Motion.)  Pretrial Services relied upon Ms. Famiglietti's misrepresentations in allowing the defendant to travel to Texas.

Contrary to her representations to Pretrial Services, Ms. Famiglietti did not accompany the defendant to Texas, and at no time did she notify Pretrial Services of her change in plans.  In fact, Pretrial Services did not discover Ms. Famiglietti's change in plans until after the defendant had already absconded, and only when Officer Gibson contacted her in search of the defendant.  (Pretrial Petition at ¶¶ 3 and 6.)

For whatever reason, Ms. Famiglietti concealed from Pretrial Services that she would not travel with the defendant as she represented she would.  In *Nguyen*, the Ninth Circuit recognized the surety's hindrance by failing to notify the court that the defendant did not actually reside with him as represented to the court.  Here, the hindrance is more substantial.  Ms. Famiglietti's misrepresentations and concealment facilitated the defendant's escape.  She failed to correct this deception until after the defendant escaped and only when Pretrial Services contacted her about the defendant's whereabouts.  Additionally, Ms. Famiglietti withdrew $12,000 in cash a month after the defendant's escape, and traveled to Panama at the approximately the same time the Unites States was able to determine the defendant's presence there.  She has also made repeated trips to Mexico City, including as recently as December 18, 2007.  The United States discovered

that the defendant applied for and received a new Panamanian passport from the Panamanian Embassy in Mexico City following his flight. Such conduct raises questions about her ongoing contact with the defendant.

The remaining sureties did nothing to alert Pretrial Services of this change, and took no steps of their own to assure the defendant's appearance in court. Despite living with Ms. Famiglietti and, in light of the seriousness of the proceedings against their father, they presumably were aware of her travel plans and the defendant's scheduled court appearances. Such inaction is, at best, willful ignorance, and, at bottom, a failure of their duties and obligations as sureties. Further, at no subsequent point have any of the sureties provided cooperation or assistance in apprehending the defendant. This factor weighs heavily in favor of the United States.

Third, the cost, inconvenience, and prejudice to the United States are considerable. The defendant remains a fugitive, and the United States is engaged in a protracted, ongoing and international search for the defendant. *Id.* at 1117. The United States must also endure the additional litigation efforts on account of the defendant's flight. *United States v. Amwest Surety Insurance Co.*, 54 F.3d 601, 604-05 (9th Cir. 1995).

Fourth, no mitigating factors are readily apparent. Indeed, the defendant is a fugitive in multiple courts and has even replaced the Panamanian passport he previously surrendered to this Court. The fifth factor, the sureties's nonprofessional status, is offset by the defendant's flight, Ms. Famiglietti's deception, and the sureties's collective failure to assist in the defendant's apprehension. *Nguyen*, 279 F.3d at 1117.

Lastly, forfeiture of the full bond amount is appropriate. The United States' motion for forfeiture and judgment is an action for liquidated damages. *Id.*; *see also United States v. Abernathy*, 757 F.2d 1012, 1015-16 (9th Cir. 1985) (no remission of bond even where the government did not specify expenses incurred as a result of bailee's breach); and *United States v. Stanley*, 601 F.2d 380, 382 (9th Cir. 1979) (bond forfeiture proper even where the government fails to show expenses incurred).

Reasonableness is determined at the time the agreement is made rather than a

1  calculation of actual provable losses when the breach occurs.  *Amwest Surety*, 59 F.3d at
2  604.  The Ninth Circuit instructs that appropriateness looks more to the proper fixing of
3  the amount of the bond itself rather than the subsequent cost, prejudice or inconvenience
4  to the United States.  *Id.*; *see also Stanley*, 601 F.2d at 382 (holding that a denial of
5  remission was within the district court's discretion where there was an intentional breach
6  of bond conditions and a lack of mitigating factors, even though "there was no showing of
7  specific prejudice, cost, or inconvenience to the Government resulting from [the]
8  breach."); *Frias-Ramirez*, 670 F.2d at 853 (stating "the court could properly have found
9  the amount of defendant's bail to have been appropriate in light of the offense with which
10 defendant was charged.").

11     Here, the bond amount of $250,000 reflected, at the time, an amount reasonably
12 necessary to ensure the defendant's appearance at trial in light of his international
13 connections, as well as recognized the concern for public safety presented from the
14 seriousness of the charges against the defendant.  By comparison, in *Nguyen*, the Ninth
15 Circuit affirmed the $100,000 forfeiture arising out of the defendant's three-week delay in
16 surrendering that required a search of the defendant's local town and arrest at his place of
17 business.  279 F.3d at 1114-15.  Set aside or remission is not justified here.

### F.  Conclusion

19     Based upon the foregoing, the United States moves for forfeiture of the bond, and
20 judgment in the amount of $250,000, against the defendant Julio Famiglietti.  The United
21 States further moves for a judgment in the amount of $250,000 against the sureties,
22 Sandra Famiglietti, Alessandra Famiglietti, Claudia Famiglietti, and Gulio Famiglietti,
23 jointly and severally.

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

Dated: January 8, 2008                          /s/
DANIEL R. KALEBA
Assistant United States Attorney