# EXHIBIT A

**FILED**

**MAR 1 5 2007**

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA OAKLAND | ORDER SETTING CONDITIONS OF RELEASE AND APPEARANCE BOND | DATE 3/15/07 | CASE NUMBER 4-07-70128 WDB |
|---|---|---|---|

| NAME OF DEFENDANT JULIO FAMIGLIETTI    HALFWAY HOUSE | ADDRESS OF DEFENDANT ~~1519 North Mitchell Canyon Road Clayton, CA 94517~~ | TELEPHONE NUMBER ~~(925) 673-0614~~ |
|---|---|---|

| NAME OF SURETY See page 2 for all other sureties | RELATIONSHIP TO DEFENDANT | ADDRESS OF SURETY | TELEPHONE NUMBER |
|---|---|---|---|

| NAME OF ~~CUSTODIAN~~ SURETY Sandra Famiglietti | RELATIONSHIP TO DEFENDANT ( deft's Wife ) | ADDRESS OF ~~CUSTODIAN~~ SURETY 1519 North Mitchell Canyon Road Clayton, CA 94517 | TELEPHONE NUMBER (925) 673-0614 |
|---|---|---|---|

| AMOUNT OF BOND $ 250,000 | ☐ UNSECURED | ☒ SECURED BY $ Deft's & Wife's Property | ☐ DEPOSIT RECEIVED RECEIVED FROM: | OTHER SECURITY POSTED? TO BE POSTED BY: | TIME/DATE OF NEXT APPEARANCE 3/29/07 @ 2:00 pm | COURTROOM/JUDGE Mag Judge Bottley |
|---|---|---|---|---|---|---|

## CONDITIONS OF RELEASE AND APPEARANCE

Defendant is subject to each condition checked:

☒ Defendant shall appear at all proceedings as ordered by the Court and shall surrender for service of any sentence imposed.

☒ Defendant shall not commit any federal, state, or local crime.

☒ Defendant shall not harass, threaten, intimidate, injure, tamper with, or retaliate against any witness, victim, informant, juror, or officer of the Court, or obstruct any criminal investigation. See 18 U.S.C. 1503, 1510, 1512, and 1513, on reverse side. & Southern Dist. of Texas, Houston

☒ Defendant shall not travel outside the Northern District of California, that is, these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, San Francisco, San Mateo, Santa Clara, Santa Cruz, and Sonoma. See map on reverse side.

☒ Defendant shall report in person immediately upon release and thereafter as directed to Pretrial Services in Oakland, CA
See addresses and telephone numbers on reverse side.

☒ Defendant shall surrender all passports and visas to the Court by 3/15/07 and shall not apply for any passports or other travel documents.

☒ Defendant shall not possess any firearm, destructive device, or other dangerous weapon.

☐ Defendant shall remain in the custody of custodian _____ at _____
who agrees to supervise him/her and to report any violation of a release condition to Pretrial Services. A custodian who fails to do so may be prosecuted for contempt.

☐ Defendant shall participate in (drug) (alcohol) (mental health) counseling, and submit to (drug) (alcohol) testing, as directed by Pretrial Services.

☒ Defendant shall not use alcohol ~~to excess~~ and shall not use or possess any narcotic or other controlled substance without a legal prescription.

☐ Defendant shall maintain current employment, or if unemployed shall seek and maintain verifiable employment.

☐ Defendant shall submit to a warrantless search of his/her person, place of residence and vehicle at the direction of Pretrial Services.

☐ Defendant shall have no contact with any co-defendant out of the presence of counsel.

☒ Defendant shall not change residence without prior approval of Pretrial Services.

☐ Defendant shall comply with the following curfew: _____ to _____

☐ Defendant shall be subject to electronic or voice track monitoring. Defendant may leave home for the purpose of _____

☒ Defendant must ☒ reside in Halfway House + may leave as directed by Pret. Svcs. ☐ participate in Residential Treatment _____

☒ The following conditions also apply:

The deft shall be released by the U.S. Marshal tomorrow morning 3/15/07 from the Oakland Fed. Courthouse Bldg. Upon release from U.S. Marshal's custody, the deft shall report immed. to Pretrial Services Office on 3/15/07 morning.

Defendant shall contribute to the cost of services provided by Pretrial Services as directed by Pretrial Services.

## CONSEQUENCES OF DEFENDANT'S FAILURE TO OBEY CONDITIONS OF RELEASE

Payment of the full amount of this bond shall be due forthwith, and all cash or property posted to secure it shall be forfeited. Judgment may be entered and executed against defendant and all sureties jointly and severally.

An arrest warrant for defendant shall issue immediately, and defendant may be detained without bail for the rest of the proceedings.

Defendant shall be subject to consecutive sentences and fines for failure to appear and/or for committing an offense while on release. See 18 U.S.C. 3146 and 3147, on reverse side.

We, the undersigned, have read and understand the terms of this bond and acknowledge that we are bound by it until duly exonerated.

| SIGNATURE OF DEFENDANT _____ 3/15/07 | SIGNATURE(S) OF SURETY(ies) _____ 3/15/07 |
|---|---|
| SIGNATURE(S) OF ~~CUSTODIAN~~ SURETY _____ 3/15/07 (Wife) | SIGNATURE OF MAGISTRATE JUDGE Wayne D. Brazil 3/15/07 |

**THIS ORDER AUTHORIZES THE MARSHAL TO RELEASE DEFENDANT FROM CUSTODY.**

1 CLERK OF COURT WHITE COPY

## BOND CONTINUATION/SUPPLEMENT

CASE NUMBER: 4-07-70128 WDB    NAME OF DEFENDANT: JULIO FAMIGLIETTI

DEFENDANT WAS RELEASED ON $250,000 secured by deff's & wife's property
SUBJECT TO THE FOLLOWING CONDITIONS:

☐ Defendant shall appear at all proceedings as ordered by the Court and shall surrender for service of any sentence imposed.

☐ Defendant shall not commit any federal, state, or local crime.

☐ Defendant shall not harass, threaten, intimidate, injure, tamper with, or retaliate against any witness or informant, juror or officer of the Court, or obstruct any criminal investigation. See 18 U.S.C. 1503, 1510, 1512, and 1513 on reverse side.

☐ Defendant shall not travel outside the Northern District of California, that is, these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, San Francisco, San Mateo, Santa Clara, Santa Cruz, and Sonoma. See map on reverse

☐ Defendant shall report in person, immediately upon release, and every_____, and by telephone every_____, by 4:00 p.m. to the U.S. Pretrial Office in _____. See addresses and telephone numbers on reverse side.

☐ Defendant shall surrender all passports and visas to the Court by_____and shall not apply for any other passports.

☐ Defendant shall not possess any firearm, destructive device, or other dangerous weapon.

☐ Defendant shall remain in the custody of the custodian named above, who agrees to supervise him/her and to report any violation of a release condition to the U.S. Marshal. If the custodian fails to do so, he/she will be prosecuted for contempt of court.

> TO NOTIFY U.S. MARSHAL    Monday through Friday, 8:00 a.m. to 4:30 p.m. (415) 436-7600
> After hours, weekend and holidays    (800) 336-0102

☐ Defendant shall participate in (drug) (alcohol) (psychiatric) counseling, and submit to drug testing, as directed by Pretrial Services.

☐ Defendant shall not use alcohol to excess and shall not use or possess any narcotic or other controlled substance without a legal prescription.

☐ The following conditions also apply:

ADDITIONAL SURETIES:
Alessandra Famiglietti (deff's daughter)    1519 North Mitchell Canyon Road
Clayton, CA 94517
NAME OF SURETY                              ADDRESS                              PHONE#

_Famiglietti_    3/15/07    (925) 673-0614
SIGNATURE OF SURETY    DATE

Claudi Famiglietti (deff's daughter)    1519 North Mitchell Canyon Road
Clayton CA 94517
NAME OF SURETY    ADDRESS    PHONE#

_Claudia Famiglietti_    3/15/07    (925) 673-0614
SIGNATURE OF SURETY    DATE

Giulio Famiglietti (deff's son)    1519 North Mitchell Canyon Road
Clayton, CA 94517
NAME OF ~~CUSTODIAN~~ SURETY    ADDRESS    PHONE#

_Giulio_    03/15/07    (925) 673-0614
SIGNATURE OF ~~CUSTODIAN~~ SURETY    DATE

# EXHIBIT B

# UNITED STATES DISTRICT COURT

for the

2007 MAR 30 AM 8:2 ;
APR 02

### Northern District of California



## U.S.A. vs Julio FAMIGLIETTI          Docket No. 4-07-70128 WDB

### Petition for Arrest Warrant and Supporting Affidavit

I, Victoria Gibson, a U. S. Pretrial Services Officer employed in the United States District Court for the Northern District of California, solemnly affirm and declare, under penalty of perjury, that to the best of my information and belief, the facts set forth in this affidavit are true and correct. The factual affirmations made below are based on my personal knowledge, on official records or documents generated and maintained by my agency in the course of performing its functions, on official records or documents generated and maintained by other government agents or agencies in the course of performing their functions, or on information provided to me orally or electronically by employees or agents of other public agencies (information developed or acquired in the course of performing official agency functions).

1.  Julio Antonio Famiglietti is the sole defendant charged in a Criminal Complaint in the Southern District of Texas, with violations of Title 18, United States Code, Section 2252A(a)(1)-Knowingly Mail, Transport, or Ship in Interstate or Foreign Commerce by Any Means, Including by Computer, any Child Pornography; and Title 18, United States Code, Section 2252A(a)(5)(B)-Knowingly Possess Child Pornography.

2.  The defendant was ordered released on March 15, 2007, by the Honorable Wayne D. Brazil, U.S. Magistrate Judge, on a $250,000 bond secured by property. He was also ordered to comply with numerous release conditions including Pretrial Services supervision and half-way house placement (at Cornell Corrections in Oakland, California).

3.  The defendant was scheduled to appear in state court in Houston, Texas, on March 29, 2007. The initial appearance in federal court, initially scheduled for the same date, was postponed to April 5, 2007. The defendant's wife, Sandra Famiglietti, provided the undersigned officer with a passenger itinerary for herself and the defendant on March 21, 2007, via fax. According to the itinerary, both Mr. and Mrs. Famiglietti were flying on Southwest airline from Oakland to Houston, on March 27, 2007. They were scheduled to return on March 29, 2007, at 23:00 hours.

Document No.
10a
District Court
Criminal Case Processing

**PAGE 2 OF 3**

**PETITION FOR ARREST WARRANT AND SUPPORTING AFFIDAVIT**
**NAME:       FAMIGLIETTI, JULIO            DOCKET: 4-07-70128 WDB**

4.    Today, March 30, 2007, at approximately 13:30 hours, this officer received a
      message from Cornell Corrections Assistant Director Mike Reed. Mr. Reed
      advised that the defendant had not returned to the facility. His leave
      authorization from the halfway house gave a return time of 01:00. Mr. Reed
      reported that staff had misunderstood the time on the leave authorization and as
      such, did not contact this officer until 13:30 today.

5.    The undersigned officer contacted Stanley Schneider, the attorney who
      represents the defendant in the Harris County matter in Texas. Mr. Schneider
      informed that he last saw the defendant when he left the Harris County
      courthouse yesterday morning.

6.    The undersigned officer contacted the defendant's wife, Sandra Famiglietti. She
      reported that she had cancelled her flight to Houston and therefore did not
      accompany her husband as planned. She advised that she last heard from the
      defendant yesterday at approximately 10:30 hours. He reportedly stated that he
      was at the Houston airport, awaiting his flight home. She indicated that she has
      not heard from the defendant since that time.

7.    The defendant's whereabouts are currently unknown.

Based on the foregoing, there is probable cause to believe the defendant has violated
the terms and conditions of his release by absconding from Cornell Corrections halfway
house and absconding from Pretrial Services' supervision. As such, I ask the Court to
issue a no bail warrant for his arrest.

Respectfully,

Victoria Gibson
U. S. Pretrial Services Officer
Place **Oakland, CA**
Date **March 30, 2007**

Approved by

Silvio Lugo, Supervising
U.S. Pretrial Officer

**PAGE 3 OF 3**

**PETITION FOR ARREST WARRANT AND SUPPORTING AFFIDAVIT**
**NAME:      FAMIGLIETTI, JULIO            DOCKET: 4-07-70128**

---

Having considered the information set forth above,

THE COURT ORDERS:

☒    The issuance of a no bail warrant for the defendant's arrest so that s/he may be
brought before the Court to show cause why his/her bail should not be revoked.

☐    Other:

_____

_____

_____

_____

_____

3/30/07
**Date**

                                        **Honorable Joseph C. Spero**
                                        **U. S. Magistrate Judge**

**United States District Court**
For the Northern District of California

1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7   UNITED STATES OF AMERICA,                    4-07-70128 WDB

              Plaintiff(s),

8

        v.                        **CERTIFICATE OF SERVICE**

9

10  JULIO FAMIGLIETTI,

              Defendant(s).

11  _____/

12

13      I, the undersigned, hereby certify that I am an employee in the U.S. District Court, Northern
    District of California.  On the below date, I served a true and correct copy of the attached, by placing
    said copy/copies in a postage-paid envelope addressed to the person(s) listed below, by depositing said

14  envelope in the U.S. Mail; or by placing said copy/copies into an inter-office delivery receptacle located
    in the Office of the Clerk.

15

16  Robert Beles
    Law Offices of Robert Beles

17  One Kaiser Plaza, Ste 2300
    Oakland, CA  94612

18  Alica Fenrick
    U.S. Attorneys Office

19  1301 Clay Street, Rm. 340S
    Oakland, CA  94612

20

21  Victoria Gibson
    US Pretrial Services

22  1301 Clay Street
    Oakland, CA 94612

23

24  Dated: April 2, 2007                RICHARD W. WIEKING, CLERK

25

26                                     By: _____

27                                          Karen L. Hom
                                            Deputy Clerk

28

# EXHIBIT C

AO 94 (Rev. 8/97) Commitment to Another Dist.

# UNITED STATES DISTRICT COURT

NORTHERN ~~District of~~ CALIFORNIA, OAKLAND DIVISION

**FILED**

UNITED STATES OF AMERICA

MAR 1 6 2007

v.

**JULIO FAMIGLIETTI**

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## COMMITMENT TO ANOTHER DISTRICT

| DOCKET NUMBER | | MAGISTRATE JUDGE CASE NUMBER | |
|---|---|---|---|
| District of Arrest | District of Offense | District of Arrest | District of Offense |
| 4-07-70128-WDB | H-07-211 M | 4-07-70128-WDB | H-07-211 M |

**CHARGES AGAINST THE DEFENDANT ARE BASED UPON AN**

☐ Indictment    ☐ Information    ☒ Complaint    ☐ Other (specify)

**charging a violation of** Title 18  U.S.C. § 2252A(a)(1) and 2252A(a)(5)(B)

**DISTRICT OF OFFENSE**

U.S. District court, Southern District of Texas, Houston

**DESCRIPTION OF CHARGES:**

Did knowingly mail, transport or ship in interstate or foreign commerce by any means, including by computer, child pornography and did knowingly possess images of child pornography that had been mailed, or shipped or transported in interstate commerce by any means, including by computer

**CURRENT BOND STATUS:**

☒ Bail Fixed at $250,000 secured by deft's and wife's property, defendant must reside in the Halfway House. Bond, if any, shall be transferred to the District of offense.

☒ Other (specify)   On March 5, 2007, the defendant waived his Identity/Removal Hearing in the District of Arrest.

| **Representation:** | ☒ Retained Own Counsel | ☐ Federal Defender Organization | ☐ CJA Attorney | ☐ None |
|---|---|---|---|---|
| **Interpreter Required?** | ☒ No | ☐ YES | Language: | |

NORTHERN **DISTRICT OF** CALIFORNIA, OAKLAND DIVISION

It is hereby ordered that the defendant must report to the U.S. District Court, Southern District of Texas, Houston before Magistrate Judge Calvin Botley **on Thursday, March 30, 2007,** and when summoned by that District, and to abide by further orders of that Court.

3-16-07
_____
Date

_____
~~United States Judge or~~ Magistrate Judge    WAYNE D. BRAZIL

**RETURN**

This commitment was received and executed as follows:

| DATE COMMITMENT ORDER RECEIVED | PLACE OF COMMITMENT | DATE DEFENDANT COMMITTED |
|---|---|---|
| | | |

| DATE | UNITED STATES MARSHAL | (BY) DEPUTY MARSHAL | Document No. |
|---|---|---|---|

District Court
Criminal Case Processing

# EXHIBIT D

1             UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3

4  - - - - - - - - - - - - - - - -

5  UNITED STATES,           )

6          Plaintiff,      )

7                      )  CASE NO.

8  V.                  )  CR 07-70128 WDB

9                      )

10  FAMIGLIETTI,          )

11          Defendant.      )

12  - - - - - - - - - - - - - - - -

13

14

15           TRANSCRIPT OF PROCEEDINGS

16      BEFORE THE HONORABLE WAYNE D. BRAZIL

17             MARCH 15, 2007

18

19

20

21        BEHMKE REPORTING & VIDEO SERVICES

22          BY:  JILL BAIONI, CSR #8812

23         160 SPEAR STREET, SUITE 300

24       SAN FRANCISCO, CALIFORNIA  94105

25            (415) 597-5600

```
 1  APPEARANCES OF COUNSEL:

 2

 3  FOR PLAINTIFF:

 4          U.S. DEPARTMENT OF JUSTICE

 5          BY:  MICHELLE MORGAN-KELLY, ESQ.

 6          1301 Clay Street, Suite 340 South

 7          Oakland, CA  94612-5217

 8          510-637-3680

 9

10  FOR DEFENDANT:

11          LAW OFFICES OF ROBERT J. BELES

12          BY:  JAMIL FRANCISCO KARWASH, ESQ.

13          1 Kaiser Plaza, Suite 2300

14          Oakland, CA  94612

15          510-836-0100

16

17

18

19

20

21

22

23

24

25
```

2

```
 1                            ---oOo---
 2            THE COURT:  So Julio Famigliett- --
 3   Famiglietti is next, please.  This is for 07-70128
 4   WDB.
 5            MS. MORGAN-KELLY:  Good morning, your Honor.
 6   Michelle Morgan-Kelly for the United States.
 7            THE COURT:  Morning.
 8            MR. KARWASH:  Good morning, your Honor.
 9   Jamil Karwash appearing on behalf of Mr. Famiglietti,
10   who is present and in custody.
11            THE COURT:  Okay.  So I received --
12   Mr. Karwash, from your offices I received this morning
13   the packet of materials related to the bond posting.
14            Has the government seen these?
15            MS. MORGAN-KELLY:  We have, your Honor.  And
16   we have a few comments.
17            THE COURT:  Go ahead.
18            MS. MORGAN-KELLY:  First of all, it appears
19   that the amount of equity in the house does not cover
20   the amount of bond.  And as the court is aware, the
21   guidelines issued by this court require that the
22   amount of equity cover the amount of the bond.  I
23   actually have the guidelines with me if the court
24   would like to take a look at them.  But the net equity
25   in the house has to be more than the amount of the
```

3

1  bond, otherwise the government cannot recover the

2  amount owing because there is a preceding security,

3  which in this case is the mortgage.

4       THE COURT:  (Unintelligible.)  Sorry.

5  Ms. Morgan-Kelly, you do know that this is up to each

6  individual judge to fix how and whether the bond is

7  secured, to what extent in each individual case on a

8  defendant- and circumstance-specific basis.  Right?

9       MS. MORGAN-KELLY:  I do, your Honor.

10       THE COURT:  And the guidelines I hope you

11  presume I both understand and by them I am not bound.

12       MS. MORGAN-KELLY:  I understand that, your

13  Honor.  I simply wanted to raise the matter for the

14  court.  And I would like to raise one other matter as

15  well.

16       THE COURT:  Okay.

17       MS. MORGAN-KELLY:  Defense counsel provided

18  me with a list of the persons who would sign as

19  sureties, which include the defendant's wife and two

20  of defendant's daughters and one of his sons.  I would

21  like to raise with the court the fact that defendant's

22  son Julio Famiglietti has a criminal history which

23  includes a 2003 misdemeanor for driving without a

24  license, 2005 felony for possession of marijuana, for

25  which he received three years probation.  And already

4

1  in 2007 a probation revocation for theft.

2        THE COURT:  Sorry.  Where were those?  Where

3  is he being supervised and where is the revocation?

4  Did the revocation already occur?

5        MS. MORGAN-KELLY:  I can hand up the criminal

6  history to the court.  But it appears the revocation

7  has recurred.  It looks like it's out of the police

8  department in Concord, January 26 of 2007.

9        THE COURT:  Okay.  And then what happened as

10 a result of the revocation?

11       MS. MORGAN-KELLY:  That, I am not sure.

12 There's nothing else listed on the criminal history,

13 your Honor.  But I have a copy.

14       THE COURT:  Mr. Karwash, do you know anything

15 about that?

16       MR. KARWASH:  No, I do not, your Honor.  I do

17 understand he does have issues that he's dealing with

18 in the local state court.  Your Honor ordered last

19 time that all these individuals become a surety, all

20 the local children.  And they are here.  Julio is here

21 present in court.  He's dealing with his issues in the

22 state court.  He's here to sign as a surety as well,

23 as well as Mr. Famiglietti's daughters and his wife.

24       THE COURT:  So the son Julio or "Julio" has a

25 felony and a misdemeanor conviction?

5

```
 1              MS. MORGAN-KELLY:  Correct, your Honor.
 2              MR. KARWASH:  That's my understanding, too,
 3   your Honor.
 4              MS. MORGAN-KELLY:  In addition, your Honor,
 5   Alexandra Famiglietti, the daughter, has 2006
 6   misdemeanor conviction for reckless driving resulting
 7   in two years probation and a substantial fine.  And
 8   I've provided a copy of that to defense counsel as
 9   well.
10              THE COURT:  Do you know anything about that?
11   I mean, was it alcohol related?
12              MS. MORGAN-KELLY:  It appears to be.  Several
13   of the charges involve driving under the influence,
14   that were dismissed in favor of a conviction for
15   reckless driving.
16              I would simply note to the court that this
17   raises concerns about the defendant and his spouse
18   serving as sureties given their prior inability to
19   control very much the conduct of the persons of whom
20   they were in charge.
21              THE COURT:  I noticed -- I didn't know
22   anything about this criminal background, obviously,
23   criminal histories, but what I did notice is that
24   there -- and I don't remember anything very clearly,
25   honestly.  But I was a little surprised at the modest
```

6

1  amount of equity.  Somehow I thought the equity was

2  going to be quite a bit higher than this.  Did we --

3          MR. KARWASH:  I believe that was the issue

4  last time, your Honor, and that's why your Honor

5  ordered us to do two appraisals on the property.  We

6  went forward -- we conducted two appraisals.  And just

7  given the market presently and that some property

8  value has gone down, those were the two appraisals

9  that we were able to -- to get from two different

10  individual people who did that.

11          I believe one is higher.  One approaches

12  900,000.  I believe Mr. Famiglietti's estimate was

13  950-, which is a reasonable estimate.  You know, we're

14  not sure how much market went down.  I'm sure it will

15  rebound, your Honor, and come back up.  When that

16  happens (unintelligible).  And I'm also sure in time

17  that 250,000 will be fully -- will be fully there with

18  the property values going up in the future

19  (unintelligible).

20          THE COURT:  Some things are better left

21  unsaid.

22          Well, gee, I don't really know what to do

23  about this.  The daughter who had the recent

24  misdemeanor conviction, is that the daughter who's

25  only 20?

7

1           MR. KARWASH:  No, your Honor.  That's the --

2           THE COURT:  24 year old?

3           MR. KARWASH:  That's correct.  The older

4    daughter, yes.

5           MS. MORGAN-KELLY:  I believe she's 23, your

6    Honor.  Her birth date is December 8th, 1983.

7           MR. KARWASH:  In light of those conditions,

8    your Honor, they are present in court.  They're here,

9    they're ready to sign.  Mr. Famiglietti is here, of

10   course, and so is his wife and they're ready to sign.

11   They're ready to post their property as bond.  All his

12   family is here (unintelligible).

13          THE COURT:  I take it this is the only

14   property that's available to any of the sureties?

15          MR. KARWASH:  Yes, your Honor.  They all live

16   there.  That's the family residence.

17          THE COURT:  Right.  And when did they buy the

18   house?

19          MR. KARWASH:  They bought the house

20   approximately ten years ago, your Honor.

21          THE COURT:  So the size of this mortgage is a

22   function of refinancing?

23          MR. KARWASH:  That's correct, your Honor.

24          THE COURT:  I see why I had the impression

25   that the equity was going to be quite a bit higher,

8

1  because the current market value of the home was
2  estimated at the time the pretrial services report was
3  prepared by the owners to be somewhere around
4  1.3 million.  Internet search disclosed more like a
5  $700,000 figure.
6          MR. KARWASH:  That's correct, your Honor.
7  (Unintelligible) --
8          THE COURT:  Right.
9          MR. KARWASH:  -- (unintelligible).
10         THE COURT:  Right, right.
11          He was granted bail on the local charges in
12  Texas, right?
13         MR. KARWASH:  That's correct, your Honor.
14         THE COURT:  And thereafter did not have
15  occasion to make an appearance on those charges
16  because of the transfer of jurisdiction to the federal
17  court?
18         MR. KARWASH:  That's correct, your Honor.
19  Because of his counsel back in Texas continuing the
20  case because counsel was in trial and also because
21  Mr. Famiglietti had complication with his heart
22  condition and had to go see a doctor.
23          In any event, your Honor, they did purchase
24  flight -- they did purchase airline tickets and did
25  make reservations intending to go to those

9

1   appearances.  And I believe they did make actually one

2   appearance, your Honor, when they were still in Texas,

3   shortly after --

4            THE COURT:  Well, "they" aren't making

5   appearances.

6            MR. KARWASH:  Mr. Famiglietti

7   (unintelligible).

8            THE COURT:  So he actually showed up in court

9   after he was bailed?

10           MR. KARWASH:  Yes.

11           THE COURT:  Is that right?

12           MR. KARWASH:  Yes.

13           THE COURT:  Okay.  All right.  Well, this

14  surety situation is softer than I thought it would be.

15  But I do want all these family members to be exposed

16  to the risk.  And I think there clearly is a risk but

17  I think it's within the boundaries the law

18  contemplates.  So if all you people will come up,

19  please, and sign.

20           250.

21           Okay, folks, Mr. Karwash.  What I need you to

22  do is one at a time lean into the mike there and just

23  state your name.  And assuming it's the same as the

24  defendant's, you don't need to spell the last name.

25  But just confirm whatever your relationship is to the

10

1  defendant.

2          MR. JULIO FAMIGLIETTI:  Julio Famiglietti.

3  I'm his son.

4          THE COURT:  Okay.

5          MS. ALEXANDRA FAMIGLIETTI:  Alexandra

6  Famiglietti.  I'm his daughter.

7          THE COURT:  And how old are you, ma'am?

8          MS. ALEXANDRA FAMIGLIETTI:  23.

9          THE COURT:  23, okay.

10          MS. CLAUDIA FAMIGLIETTI:  Claudia

11  Famiglietti.  And I'm his daughter.

12          THE COURT:  And you're 20?

13          MS. CLAUDIA FAMIGLIETTI:  20.

14          THE COURT:  Okay.

15          MS. SANDRA FAMIGLIETTI:  Sandra Famiglietti.

16  Wife.

17          THE COURT:  Okay.  Are you comfortable in

18  English, ma'am?

19          MS. SANDRA FAMIGLIETTI:  Yes.

20          THE COURT:  Do you understand?

21          MS. SANDRA FAMIGLIETTI:  Yes.

22          THE COURT:  Okay, good.  It's just important

23  that everybody understand.

24          All right.  You guys, I need to be able to --

25  you can hold the child, of course.  But I need to be

                                                              11

1  able to talk to you.  This is a complicated situation.

2  Your husband and your dad has -- is accused and

3  there's a fairly substantial amount of evidence

4  essentially that he's got an addiction.  And an

5  addiction is an important word in that sentence

6  because it suggests an inability to control.  And

7  that's what we're talking about here.  The issue here

8  is control.  Not your control of him.  You don't have

9  it.  But his control of himself.

10         And the reason -- this isn't Sunday morning.

11  I'm not making a sermon.  What I -- what's important

12  is that you guys understand that there's a risk here.

13  And obviously you haven't been able to restrain him.

14  And I don't even know and I don't want to know what

15  you've known about what he's been doing.  But you

16  cannot assume that you have the emotional or

17  psychological or other kinds of power to actually

18  restrain him.

19         I do need you to pay attention.  Obviously

20  the child's fine but you need -- I need to -- I see

21  you guys watching the child and that's -- you have to

22  do that a little bit.  But I need to know that you

23  understand what you're doing here.

24         The core fear in the law is that this

25  addiction will -- that he won't -- that your husband,

12

1  your father, won't be able to control this addiction
2  and that either he'll commit something else that's bad
3  and wrong -- and it is bad and wrong to be even
4  possessing child pornography.

5         This is not Sunday morning.  This is our
6  secular society.  Abusing people who are powerless is
7  not cool.  So someone who's got an addiction that --
8  that permits himself to do that, probably with all
9  kinds of rationalizations, but permits himself to do
10  that might permit himself to flee or hide and hurt
11  you, with all kinds of rationalizations.  If he flees
12  or hides, he hurts you, each one of you, to the tune
13  of $250,000.  If he possesses or tries to possess or
14  tries to transmit child pornography, each one of --
15  that's a crime, a serious one.  Each one of you owes
16  $250,000.  So if his addiction leads him to recommit
17  or to get afraid and try to hide or flee the country
18  or do something like that, then each one of you owes
19  the money.

20         Now, the reason I'm telling you all this is
21  that you each need to make an independent decision
22  about whether you have enough confidence that he'll
23  control himself, not engage in this kind of activity
24  and show up in court when he's supposed to.  And he's
25  got a right to a trial, he's got a right to the whole

13

1    process, but he must show up in court and he must obey

2    the law in this very important arena.

3            So if you have confidence, "Okay, he'll do

4    that" -- you're not talking about the past, you're not

5    making any statement about the past; you're making a

6    statement about him in the future.  In the future

7    he'll not violate the law in this arena and he will

8    show up.  If that's -- if you believe that, you can go

9    ahead and sign the paper.  If you have substantial

10   doubts that he'll do those two things -- comply with

11   the law in this arena, show up in court -- if you have

12   substantial doubts you shouldn't sign the paper.

13           Everybody understand?  You all prepared to

14   sign?  Okay.  So we'll get your addresses and phone --

15   well, I guess she's got most of that.  She'll show you

16   guys where to sign.

17           Now, wait, I'm sorry, one more thing.  He's

18   going to be in a halfway house.  It's not a jail.

19   It's better than a jail.  That's why he wants to be

20   there.  But you need to know that it's not a jail and

21   there aren't guards sitting at every window every ten

22   seconds and so forth.  So if he decides to, he's got

23   the physical capacity to flee from there.  Okay?

24   Okay.

25           (Unintelligible discussion.)

                                                        14

1          THE COURT:  15th.

2          (Unintelligible discussion.)

3          THE COURT:  Okay.  Now, there's another

4   important thing I need to tell you folks.  Each of you

5   is making this decision independently.  Each of you

6   has a right to change your mind independently.  If you

7   decide ten minutes from now or whenever, "Oh, we don't

8   want to be on this risk anymore" -- what I mean -- I

9   said "we."  What I really mean is "I" for each one of

10  you.  You don't want to be on the risk, you come down

11  and tell me and I let you out.  Okay?

12          Now, if he's violated the rules in some

13  substantial way before then, you owe the money.  But

14  if he hasn't, each of you has a right to get out of

15  this.  If you exercise that right by coming and saying

16  "I want out," fine, I let you out and then I have to

17  rethink, obviously, his situation.  But you need to

18  know you have that right.

19          Now, when the case is over, and it could be

20  over in many different kinds of ways, when the case is

21  over in the charging court the law on its own will

22  tear up the bond.  You don't need to do anything about

23  it, it will just be done and the property will be

24  deeded back to the mom and dad and everything will be

25  fine.  And when I say the case is over, I don't mean

15

1  if he gets jail time and has to serve it.  I mean when

2  the case is concluded and he shows up to start serving

3  any sentence, that's when the bond would be torn up.

4  Okay?

5         Now, if he's -- obviously if he's acquitted

6  or the case is dismissed or something, then the bond

7  would be torn up at that point.

8         Okay.  Now, my -- pretrial services hasn't

9  heard formally yet from the halfway house.  The way

10 the contract works between the court and the halfway

11 house is the halfway house has the right to say, "No.

12 Sorry, we won't take this person."  And there's a

13 small chance that they will say that given the charges

14 here.  So we have to wait until we hear from them, but

15 we will hear from them in the next couple of hours.

16        So my order will be that the marshalls roll

17 you up, take you back out to --

18        Where is he, at North --

19        UNIDENTIFIED SPEAKER:  Santa Rita.

20        THE COURT:  Okay.  So they'll take you back

21 out to Santa Rita this afternoon when their other

22 obligations permit them to do that.  Then they're

23 gonna roll you up in the morning, process you out of

24 Santa Rita, bring you back in here and you'll go see

25 the pretrial services officer and he'll get you over

16

```
 1    to the halfway house.  Okay?
 2              Now, we'll let the marshalls know and we'll
 3    let your lawyer know if the halfway house says no.
 4    Then we got to regroup and figure out what Plan B is.
 5    Okay?  I don't think they'll say that, mostly because
 6    of his age.  If he were younger they might say that.
 7    And they still might.  So we got to -- we got to see.
 8              Now we need a date for him to be ordered to
 9    appear in the charging jurisdiction.
10              MS. MORGAN-KELLY:  Your Honor, I would
11    suggest a date late in the week of March 26th, perhaps
12    the 29th, which is two weeks from today.  Felony
13    initial appearance (unintelligible) 2:00 p.m. in
14    Houston.
15              THE COURT:  Okay.
16              MS. MORGAN-KELLY:  And the courthouse is
17    located at 515 Rusk, R-u-s-k, Avenue in Houston.
18              THE COURT:  Okay.  Mr. Karwash can get that
19    information.  Is there a contact number there, too, in
20    terms of a prosecutor?
21              MS. MORGAN-KELLY:  Yes.  The prosecutor is
22    assistant U.S. attorney Richard Magness.
23              THE COURT:  M-a-g-n-u-s?
24              MS. MORGAN-KELLY:  M-a-g-n-e-s-s.
25              THE COURT:  Okay.
```

17

1          MS. MORGAN-KELLY:  And his number is

2     713-567-9582.

3          THE COURT:  Did you get that, Mr. Karwash?

4          MR. KARWASH:  Yes, your Honor.

5          THE COURT:  Okay, good.

6          So you'll be in touch with those folks back

7     there just to make sure all the I's are dotted and T's

8     are crossed.

9          So my order is that you appear --

10         I'm sorry.  Did you say 2:00 o'clock?

11         MS. MORGAN-KELLY:  2:00 p.m. on March 29th

12    before the Honorable Judge Calvin Botley.

13         THE COURT:  B-o-t-l-e --

14         MS. MORGAN-KELLY:  Y.

15         THE COURT:  -- y.  Is that a district judge

16    or a magistrate judge?

17         MS. MORGAN-KELLY:  It's a magistrate judge,

18    your Honor.

19         THE COURT:  Okay, good.

20         So you'll appear before that judge in Houston

21    on the 29th at 2:00 o'clock.  And that will be your

22    initial, first appearance there.  And then there will

23    be some planning about the next events in the case.

24    Okay?

25         Okay.  Thanks very much.

18

1          MR. KARWASH:   Thank you, your Honor.

2          MS. MORGAN-KELLY:   Thank you, your Honor.

3          (End of transcription.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

19

1   STATE OF CALIFORNIA      )

2   COUNTY OF SAN MATEO      )

3        I hereby certify that the transcript is a true

4   record of the audiotaped recording as reported by me, a

5   duly certified shorthand reporter and a disinterested

6   person, and was thereafter transcribed into typewriting

7   by computer.

8        I further certify that I am not interested in

9   the outcome of the said action, nor connected with, nor

10  related to any of the parties in said action, nor to

11  their respective counsel.

12       IN WITNESS WHEREOF, I have hereunto set my hand

13  this 5th day of December, 2007.

14

15

16  _____

17  JILL BAIONI, CSR # 8812

18  STATE OF CALIFORNIA

19

20

21

22

23

24

25

20

# LAWYER'S NOTES

| Page | Line | |
|------|------|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

# EXHIBIT E

1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3

4      - - - - - - - - - - - - - - - - -

5    UNITED STATES,                    )

6                    Plaintiff,        )

7                                      )   CASE NO.

8    V.                                )   CR 07-70128 WDB

9                                      )

10   FAMIGLIETTI,                      )

11                   Defendant.        )

12     - - - - - - - - - - - - - - - - -

13

14

15                  TRANSCRIPT OF PROCEEDINGS

16           BEFORE THE HONORABLE WAYNE D. BRAZIL

17                      MARCH 7, 2007

18

19

20

21              BEHMKE REPORTING & VIDEO SERVICES

22                 BY:  JILL BAIONI, CSR #8812

23                 160 SPEAR STREET, SUITE 300

24           SAN FRANCISCO, CALIFORNIA  94105

25                        (415) 597-5600

1

```
 1   APPEARANCES OF COUNSEL:

 2

 3   FOR PLAINTIFF:

 4          U.S. DEPARTMENT OF JUSTICE

 5          BY:  MICHELLE MORGAN-KELLY, ESQ.

 6          1301 Clay Street, Suite 340 South

 7          Oakland, CA  94612-5217

 8          510-637-3680

 9

10   FOR DEFENDANT:

11          LAW OFFICES OF ROBERT J. BELES

12          BY:  JAMIL FRANCISCO KARWASH, ESQ.

13          1 Kaiser Plaza, Suite 2300

14          Oakland, CA  94612

15          510-836-0100

16

17

18

19

20

21

22

23

24

25
```

                                                                    2

```
 1                        ---oOo---

 2            THE COURT:  Julio Famiglietti.

 3            Oh.  Do we have to proceed under seal here?

 4            MS. MORGAN-KELLY:  It is under seal, your

 5    Honor.

 6            THE COURT:  That wasn't my question.  The

 7    question is do we have to proceed under seal?  Is the

 8    government ready to unseal it or not?

 9            MS. MORGAN-KELLY:  It's sealed in Houston

10    which is the reason that it was sealed here.  I

11    imagine that was for purposes --

12            THE COURT:  Okay.  I'll have to clear the

13    courtroom of those persons who are not involved in

14    this matter.

15            MS. MORGAN-KELLY:  Your Honor, I believe the

16    matter can be unsealed here.  I imagine it was sealed

17    for purposes of securing the defendant.

18            THE COURT:  Okay.  (Unintelligible.)

19            MS. MORGAN-KELLY:  And arresting him.

20            THE COURT:  So I'll grant the motion,

21    government's motion to unseal at least the local

22    proceedings here.

23            MR. KARWASH:  Good morning.

24            THE COURT:  Mr. Karwash, (unintelligible)

25    appearance.
```

3

```
 1          MR. KARWASH:  Yes, your Honor.  Good morning.
 2   Jamil Karwash specially appearing for Robert Beles on
 3   behalf of Mr. Famiglietti, who is present in custody.
 4          THE COURT:  Okay.
 5          MS. MORGAN-KELLY:  Good morning, your Honor.
 6   Michelle Morgan-Kelly, again for the United States.
 7          THE COURT:  Okay.  What -- have you folks had
 8   a chance to talk about his custodial status,
 9   Ms. Kelly?
10          MS. MORGAN-KELLY:  We have not, your Honor.
11   But the government is seeking detention.
12          THE COURT:  Okay.  I was given a bunch of
13   information last time by Mr. Karwash which is relevant
14   to the bail decision.  Has that been shared with the
15   government?  I mean, the medical business and the --
16          MS. MORGAN-KELLY:  I'm aware of what's in the
17   pretrial services report, your Honor.
18          THE COURT:  Okay.  Mr. Karwash, remind me
19   what -- what tran- -- he was -- I know he was arrested
20   by locals.  In Texas, excuse me.  And I think I recall
21   you saying that he bailed on Texas; is that right?
22          MR. KARWASH:  That's correct, your Honor.
23          THE COURT:  Meaning he met bail, he paid
24   bail.  And then did he make appearances?  He made one
25   appearance in Texas, I guess.
```

4

1          MR. KARWASH:  He made one appearance, your

2    Honor.  There were subsequent appearances scheduled of

3    which Mr. Famiglietti and his family purchased the

4    airline tickets and made reservations in hotels to

5    attend.  Unfortunately, the attorney, Mr. Snider

6    (phonetic) in Texas, was in a tri- -- in a trial so

7    there was a continuance of those appearances.  And

8    then the subsequent appearance, Mr. Famiglietti had a

9    complication with his heart surgery, so then there was

10   another continuance.

11          I spoke to Mr. Snider yesterday and he

12   indicated to me -- and he's willing to sign a

13   declaration, affidavit, whatever he needs to do.  He

14   indicated this was what happened, what I'm telling you

15   right now, your Honor.  Mr. Famiglietti was aware from

16   Mr. Snider that this case may go federal.  And

17   Mr. Snider -- once the feds got the information --

18   indicated to Mr. Famiglietti that we're just waiting

19   around to see whether this is gonna go federal or not.

20   Mr. Famiglietti was at his home in Clayton.  He

21   resided there.  He was in constant contact with the

22   bail bondsman in Texas regarding his $60,000 bail.  So

23   that -- (unintelligible).

24          THE COURT:  Okay.  No, no.  That's all

25   relevant.

1          Did -- so I want you to confirm what I'm

2    inferring from what you said, and that is that there

3    was no appearance in any court in Texas in which the

4    court deemed the defendant had failed to appear?

5          MR. KARWASH:  That's correct, your Honor.

6    There have been no failure to appears is my

7    information.

8          THE COURT:  Okay.  Okay.  And the -- what is

9    the proffer in terms of sureties?

10         MR. KARWASH:  Your Honor, from the report and

11   from what Mr. Famiglietti's family has told me the --

12   his wife is willing to be a surety, preferably

13   unsecured, your Honor.  But they do have property.

14   They do have real estate they can post.  Also, his --

15         THE COURT:  Let me ask you about that for a

16   second as long as we're on that subject.  It says in

17   pretrial that Mrs. Famiglietti believes that the

18   couple owe about 750- on the property.  Then she

19   says -- or somebody said that the current market value

20   they thought was about 1.3.  But pretrial looked in

21   the computer and said:  Gee, it looks like it's only

22   about 7-.  And then in the math it describes their

23   financial circumstances -- the property is listed

24   about 925-.

25         What the heck is the property worth and

6

1   what's owing on it?

2          MR. KARWASH:  My understanding, your Honor,

3   is that the property is worth, I believe -- well, I

4   have to go back.

5          THE COURT:  In other words, if they sold it

6   today, what would a fair price likely be?

7          MR. KARWASH:  Well, your Honor, I want to

8   answer your question but I have to answer it

9   backwards, your Honor.  My understanding from the

10  beginning is that there was about 150,000 to $100,000

11  in equity in the property.  My understanding is that

12  the Famiglietti's bought the property ten years ago

13  for about $240,000.  And as we all know, there's been

14  a substantial increase in real estate.  Where they got

15  their appraisal from, I don't know.  They're not --

16  you know, they're not real estate experts.  It's

17  probably just a ballpark figure, your Honor.

18         THE COURT:  But they borrowed 750- against

19  it?

20         MR. KARWASH:  Yes.  My understanding is that

21  they -- .

22         THE COURT:  From refinancing?

23         MR. KARWASH:  They refinanced, they've taken

24  money evidently for -- okay.  Okay.

25         Well, Mr. Famiglietti's indicating that there

7

1  is some appraisal that had been done and the appraisal

2  indicates that it's almost a million.

3          THE COURT:  That's a recent appraisal?

4          MR. FAMIGLIETTI:  (Unintelligible.)

5          THE COURT:  June 2006?

6          MR. FAMIGLIETTI:  (Unintelligible.)

7          THE COURT:  Okay.  So anyway, so maybe

8  between 100- and 200- in equity, something like that.

9          MR. KARWASH:  That's correct, your Honor,

10  yes.

11          THE COURT:  Okay.  So that's the wife and his

12  property.  I take it there's no other property

13  available from anyone else in the family?

14          MR. KARWASH:  No, your Honor.  The

15  information I have so far is that there isn't any

16  other property available.  He does have his two

17  daughters present who are willing to sign sureties,

18  unsecured sureties, and his wife as well, who is

19  present.

20          THE COURT:  Let me -- the daughters are ages

21  24 and 22?

22          MR. KARWASH:  That's correct, your Honor.

23  Alexandra and Claudia.

24          THE COURT:  Claudia is only 20.  Where's --

25  where's -- oh.  Are there two sons and two daughters?

1           MR. KARWASH:  I believe so.  Yes, judge.

2           THE COURT:  Yeah.  Four kids.  Okay.

3           So what's wrong with the sons?  Why won't

4    they sign?

5           MR. FAMIGLIETTI:  (Unintelligible.)

6           THE COURT:  Okay.

7           MR. KARWASH:  My understanding, your Honor,

8    is he was a little apprehensive to a phone call from

9    pretrial services.  He sort of wasn't clear exactly

10   who --

11          THE COURT:  Does he have a criminal history?

12          MR. KARWASH:  I don't know, your Honor.

13          THE COURT:  Okay.

14          MR. KARWASH:  Whatever's in pretrial

15   services.  There's information that pretrial services

16   received.  I have no clue.

17          THE COURT:  Okay.  And then it says something

18   about -- is it Gulio, G-u-i -- G-u-l-i-o.  What -- but

19   I can't remember what it says about him.  Is he

20   available to sign?

21          MR. KARWASH:  Julio Famiglietti is the

22   defendant, your Honor.

23          THE COURT:  No, no, no.  There's a

24   26-year-old somebody.

25          MR. KARWASH:  Oh.  "Julio."  Yes.

9

```
1              THE COURT:  And what's his story?

2              MR. KARWASH:  I think Julio --

3   Mr. Famiglietti just indicated that (unintelligible).

4              THE COURT:  No, no, no.  That's Georgio.

5              MR. FAMIGLIETTI:  (Unintelligible.)

6              THE COURT:  A lender?  So he's the one who

7   lives with you?

8              MR. FAMIGLIETTI:  (Unintelligible)

9   lender/broker.

10             THE COURT:  I'm sorry.  He's the one who

11  lives with you and his son lives with you as well?

12             MR. FAMIGLIETTI:  Yes.  All of them.

13             THE COURT:  Okay.  Okay.  All right.  What's

14  the government's input here?

15             MS. MORGAN-KELLY:  Your Honor, the government

16  of course is seeking detention.  This is a presumption

17  case.  He's charged in Houston currently with

18  transporting and possessing child pornography.

19             With respect to his danger to the community,

20  as noted in the pretrial services report he was

21  returning from Panama and in his possession was a

22  computer and other digital storage media as well as a

23  female child's underpants and sexual novelties.  Court

24  may be aware that Panama is a destination known for

25  sex tourism.  And defendant also had child pornography
```

10

1  in his possession, which is often used by individuals

2  to persuade children to engage in sexual activity by

3  showing them pictures and explaining that other

4  children do this so maybe you want to do this, too.

5  So that's obviously of concern to the government.

6          When his items were searched that were seized

7  at the airport, he had thousands of images of child

8  pornography and over 100 movies, including disturbing

9  videos of child molestation.  He also had a credit

10 card subscription to a commercial child pornography

11 web site.  And a search of his home here in California

12 yielded a large collection of over 3700 pictures of

13 child pornography.

14         With respect to flight, he is now facing a

15 five-year mandatory minimum in Texas for transporting

16 child pornography.  He likely will face charges here

17 in California as well.  He is clearly engaged in

18 extensive international travel and is a citizen of

19 three different countries.  He will be expected to

20 report back to Houston, of course, to face these

21 charges.

22         And in light of all of these facts and the

23 fact that it's a presumption case, your Honor, we

24 believe that no sureties and no amount of posting of

25 bond can ensure that he will not be a danger to the

11

1  community or that he will not flee.  So for those
2  reasons we're seeking detention.
3           THE COURT:  Okay.  Has there been any
4  tentative exploration of a Rule 20 disposition?
5           MR. KARWASH:  Yes, your Honor.  We're not --
6  we're not objecting to -- to -- I'm sorry --
7  extradition.
8           THE COURT:  No, that's not -- I'm sorry.
9  That's not what I'm talking about.
10          MR. KARWASH:  Oh.
11          THE COURT:  What I'm -- when I read the
12 material that supports the complaint certainly there's
13 a basis in the affidavit to support charges in
14 Houston, but frankly it looks like the locus primary
15 of the unlawful activity as alleged is here.  And it
16 occurred to me that it might be perceived by the
17 defendant in his interest to have the matter
18 transferred from Texas to here for disposition by
19 plea.  And what I'm wondering is if that's just a
20 figment of my imagination or if there's been any
21 exploration of that.  It has some bearing on the risk
22 of flight.
23          MR. KARWASH:  Oh.  Your Honor, that -- I've
24 spoken with his wife regarding that issue and with
25 Mr. Famiglietti.  And given the substantial economic

12

1  hardship of having to fly back and forth from Texas,

2  which they have already beared given the local case,

3  that that would be -- that would be what they would

4  desire, is to keep the case here.

5          THE COURT:  You understand that it can only

6  come here if everybody agrees.  Most importantly, that

7  he agrees to plead guilty to something of consequence.

8          MR. KARWASH:  I didn't know that, your Honor.

9          THE COURT:  Okay.  Well, that's pretty

10  important.  So obviously you haven't explored this or

11  a --

12          MR. KARWASH:  No, not yet.

13          THE COURT:  Okay.  Has there been any

14  conversation -- okay.

15          MS. MORGAN-KELLY:  No, your Honor.

16          THE COURT:  Well --

17          MR. KARWASH:  Your Honor, I'd just like to

18  add, if I may, given the pretrial services report,

19  your Honor, and what it's recommending, and given the

20  extraordinary circumstances, again Mr. Famiglietti's

21  heart condition, your Honor, you know, we would

22  request that he be released either on an unsecured

23  bond or property bond.  There's been absolutely --

24          THE COURT:  Okay.  There's no chance of him

25  being released on an unsecured bond.  Zero.  But I'm

                                                    13

```
 1    wondering if -- you may well not want to make a
 2    proffer about this, but one of the things that I have
 3    to think about is if he's released where would that
 4    be.  And one of the things that's also pertinent to
 5    the surety situation is whether there was -- I don't
 6    know how to say this gently.  But whether the family
 7    had any awareness of what was going on.  Apparently
 8    there are thousands of both still and mobile images
 9    and the equipment and stuff that he had in the house.
10    The suitability of the sureties is partly a function
11    of what their knowledge was of what was going on
12    and/or their ability to exert constructive pressure on
13    the defendant.
14          Be careful now.  Do you want to make a
15    proffer about any of that?
16          MR. KARWASH:  No, your Honor.
17          THE COURT:  Okay.
18          MR. KARWASH:  I would be misrepresenting
19    (unintelligible).
20          THE COURT:  Well, I don't want you to do that
21    but you also have some very sensitive things to worry
22    about in your client.
23          MR. KARWASH:  Yes, your Honor.
24          THE COURT:  All right.  Here is what I'm
25    inclined to do.  I'm inclined to put him in a halfway
```

14

1  house on a full-time basis with the posting of the
2  property and the signatures.  But I want both the
3  daughters.  And I'm a little nervous about the 20 year
4  old.  And I don't understand why the 26-year-old son
5  can't sign as well.  The son that's in Arizona, I
6  guess it would be excess.  But I don't -- I can leave
7  him off the table.  But if the local son, the two
8  daughters and the mom will sign and he and the mom
9  post the property, then I'll put him in a halfway
10  house and see how that goes.
11        And then maybe over time you can figure out
12  something about this family situation.  You may not
13  want to ever make a proffer about that, but I can't
14  release him in this setting without -- to the family
15  without some reassurances that I do not now have.
16  Okay?
17        So get the property stuff together and figure
18  out -- now we've got a lot of waffling on the value of
19  this property so I'm going to need a truly independent
20  appraisal that's current.
21        MR. KARWASH:  Okay.
22        THE COURT:  Okay?  That someone goes and
23  actually looks at the house.  Because it's just a
24  little -- these numbers are too mobile for my
25  confidence now.

15

```
 1          MR. KARWASH:  Okay.
 2          THE COURT:  Now, before they go through all
 3   this is the government going to appeal this?  If so,
 4   then I don't -- then I just issue a few-line order
 5   that says to the judge above me in the system, who I
 6   guess right this minute is in Texas, I know is in
 7   Texas, and then I just issue an order:  Here's what my
 8   intentions are.  And then the government could appeal
 9   that to Texas.  I don't want the family going through
10   all this if the government's going to appeal.
11          MS. MORGAN-KELLY:  Your Honor, I haven't yet
12   consulted with the U.S. attorneys' office in Houston
13   regarding the appeal.  But I would note the
14   government's objection for the record to defendant's
15   release.  And I can notify the court as to whether
16   (unintelligible).
17          THE COURT:  All right.  So get this started.
18   She'll let you know right away if the government is
19   going to appeal.  If they're going to appeal, there's
20   no point in doing this until we hear from the folks in
21   Houston.  And you and the other lawyers in
22   Mr. Beles's office I think should think about Rule 20.
23          MR. KARWASH:  Okay.
24          THE COURT:  Just a suggestion.  Has some
25   pertinence to what we're doing here.
```

16

```
 1              MR. KARWASH:  Your Honor, just one more
 2   issue, with regards to Mr. Famiglietti's medication.
 3   Last time you went ahead and ordered that all his
 4   medicines be given to him.  But unfortunately I don't
 5   know what's happened.  He hasn't been given his
 6   medicine.
 7              THE COURT:  None?
 8              MR. KARWASH:  Yesterday none except for blood
 9   pressure medicine and a painkiller.
10              THE COURT:  Does he have -- does he have a
11   bunch of prescriptions from a treating physician
12   and/or the surgeon?
13              MR. KARWASH:  Yes, he does.
14              THE COURT:  Okay.  Get those prescriptions
15   all marshalled together and give me a copy and give
16   Frank a copy today.
17              MR. KARWASH:  Okay.
18              THE COURT:  And then he'll get the meds.
19              MR. KARWASH:  Yes, your Honor.
20              THE COURT:  Okay?  So we need -- hmm.  The
21   matter's still in the complaint stage in Texas --
22              MS. MORGAN-KELLY:  Correct.
23              THE COURT:  -- so we need to set some control
24   dates here.  And you guys need to be talking so these
25   control dates don't create momentum on their own.
```

17

1           MR. KARWASH:  Yes, your Honor.

2           THE COURT:  If the government decides to

3   appeal, the government can let us know within 24 hours

4   or so?

5           MS. MORGAN-KELLY:  Yes, your Honor, assuming

6   I can reach the AUSA by then.

7           THE COURT:  Let us know one way or the other,

8   even if you can't reach him.

9           I'm assuming that the property documents

10  could be gathered in a sufficient form by the middle

11  of next week.  So why don't I set this on my calendar

12  as a control date for Wednesday next.  And that can be

13  for posting of the property, signing of the bond, and

14  so forth.  If it's ready before then and the

15  government has not appealed, Mr. Karwash, then you can

16  bring it on my calendar before that.

17          MS. MORGAN-KELLY:  Your Honor, I apologize

18  for interrupting.  Would it be possible to set it for

19  Thursday instead?  I'll be out of the district on

20  Wednesday.

21          THE COURT:  It's okay with me.

22          Mr. Karwash, let's set it for Thursday at

23  10:00.  And then -- but if you get everything lined up

24  and the government's not appealing, then you can come

25  in earlier than that.  Okay?

1          MR. KARWASH:  That's fine.

2          THE COURT:  So the -- but the control date's

3   Thursday at 10:00.  And then you guys, meaning all of

4   you, need to be talking about whether it's sensible to

5   have an indictment returned in Houston.  And that's

6   not a self-answering question.

7          MR. KARWASH:  Okay.

8          THE COURT:  Okay?  And let me know next

9   Wednesday or Thursday about that.  And then we'll have

10  to -- I think I'm going to need some help from the

11  government about whether we need a PX here, depending

12  on how long this plays out.  So you guys need to talk

13  that through.  Okay?

14         MS. MORGAN-KELLY:  Very well, your Honor.

15         MR. KARWASH:  Your Honor, where would he be

16  released from custody?

17         THE COURT:  My intention would be to release

18  him next Wednesday to the halfway house, assum- -- I

19  mean next Thursday, excuse me, assuming all the

20  paperwork's in order and the people I've asked to sign

21  sign.

22         MR. KARWASH:  I see, your Honor.

23         THE COURT:  Okay?

24         MR. KARWASH:  Okay.

25         THE COURT:  Now if you get it together before

19

1   that and there's not an appeal, then we can do it

2   earlier.  But you need to have the property documents.

3   I need -- because of this unusual circumstance, I need

4   the documents to be sort of "I" dotted and "T"

5   crossed.  And we need not only the appraisal but

6   obviously a competent title search and stuff like

7   that.

8            MR. KARWASH:  I see, your Honor.

9            THE COURT:  Okay?

10           MR. KARWASH:  Okay.

11           THE COURT:  Okay.  So as fast as you can get

12  it done.  Now, if the government appeals, all these

13  local bets are off.  If the government appeals, then

14  it's up to the folks in Texas.  And they're gonna have

15  to indict him pretty soon if the government appeals

16  because I assume he's not waiving his time for

17  indictment.

18           Talk about that later, okay?  You guys talk

19  about that off the record.

20           MR. KARWASH:  Okay.

21           THE COURT:  Okay.

22           MS. MORGAN-KELLY:  Thank you, your Honor.

23           MR. KARWASH:  Thank you, your Honor.

24           (End of transcription.)

25

20

```
 1   STATE OF CALIFORNIA      )

 2   COUNTY OF SAN MATEO      )

 3           I hereby certify that the transcript is a true

 4   record of the audiotaped recording as reported by me, a

 5   duly certified shorthand reporter and a disinterested

 6   person, and was thereafter transcribed into typewriting

 7   by computer.

 8           I further certify that I am not interested in

 9   the outcome of the said action, nor connected with, nor

10   related to any of the parties in said action, nor to

11   their respective counsel.

12           IN WITNESS WHEREOF, I have hereunto set my hand

13   this 5th day of December, 2007.

14

15

16   _____

17   JILL BAIONI, CSR # 8812

18   STATE OF CALIFORNIA

19

20

21

22

23

24

25
```

21

# LAWYER'S NOTES

| Page | Line | |
|------|------|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

# EXHIBIT F

FROM : INTRADES/ BELLA EURODOORS       FAX NO. :925 672 7500       Mar. 21 2007 07:43PM P 3

Southwest Airlines - Retrieve Itinerary

Page 1 of 2



Home : About Southwest : Help

Book Travel    Special Offers    Travel Tools

# TRAVEL TOOLS

**TRAVEL TOOLS**

SOUTHWEST POLICIES

TRAVEL TIPS/
AIRPORT INFORMATION

SOUTHWEST CITIES

CONTACT US

HELP

SEARCH

GO

## Passenger Itinerary

### Southwest Airlines Confirmation Number

| Confirmation Number | Passenger | Account Number | Disability Assistance |
|---|---|---|---|
| CW74ZD | JULIO FAMIGLIETTI | 00000129970750 | - None Entered - |
| CW74ZD | SANDRA FAMIGLIETTI | - None Entered - | - None Entered - |

### Flight Information

#### Oakland to Houston (Hobby)

| Date | Day | Stops | Routing | Flight | Routing Details |
|---|---|---|---|---|---|
| Mar 27 | Tue | N/S | OAK-LAX | 2090 | Depart Oakland(OAK) at 2:00PM Arrive in Los Angeles(LAX) at 3:10PM |
| | | N/S | LAX-HOU | 1228 | Depart Los Angeles(LAX) at 4:25PM Arrive in Houston (Hobby)(HOU) at 9:25PM |

#### Houston (Hobby) to Oakland

| Date | Day | Stops | Routing | Flight | Routing Details |
|---|---|---|---|---|---|
| Mar 29 | Thu | N/S | HOU-PHX | 2924 | Depart Houston (Hobby)(HOU) at 7:15PM Arrive in Phoenix(PHX) at 8:10PM |
| | | N/S | PHX-OAK | 1234 | Depart Phoenix(PHX) at 9:00PM Arrive in Oakland(OAK) at 11:00PM |

### E-mail Itinerary Information

After making any necessary modifications please click on check box(es) under SEND for any e-mail you would like us to resend and then click on the button below.

| E-mail Address | Status 1 | Send |
|---|---|---|
| | ** none entered ** | ☐ |
| | ** none entered ** | ☐ |

# EXHIBIT G

# ROBERT J. BELES
## ATTORNEY AT LAW

THE ORDWAY BUILDING
1 KAISER PLAZA, SUITE 2300
OAKLAND, CA 94612

PHONE (510) 836-0100
-------------------
FAX    (510) 832-3690

# FAX COVER SHEET

To: Victoria Gibson
    U.S. Pretrial Services Officer

Fax No: (510) 637-3761

From: Sandra Famiglietti

RE: Julio Famiglietti

Enclosed: Travel Confirmation

Date: Monday, March 26, 2007

No. of pages including cover page: 2

**CONFIDENTIAL NOTICE**

**THE DOCUMENT(S) ACCOMPANYING THIS TELE-COPY TRANSMISSION CONTAIN
CONFIDENTIAL INFORMATION WHICH IS LEGALLY PRIVILEDGED. THE INFORMATION
BELONGS TO THE SENDER, AND IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR
ENTITY NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY
NOTIFIED THAT ANY RELIANCE ON THE CONTENTS OF THIS TELE-COPIED INFORMATION IS
STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TELE-COPY IN ERROR, PLEASE
IMMEDIATELY NOTIFY US BY TELEPHONE TO ARRANGE FOR A RETURN OF THE TELE-COPY
DOCUMENTS TO US.**

**IF THERE IS ANY PROBLEM WITH THIS TRANSMITTAL, PLEASE CALL (510) 836-0100**

AT&T Yahoo! Mail - sandrasofia@pacbell.net

# YAHOO! MAIL

Print - Close Window

**From:**  houres@magnoliahotels.com

**To:**  sandrasofia@pacbell.net

**CC:**  houres@magnoliahotels.com

**Subject:**  Magnolia Houston reservation confirmation #112868

**Date:**  Mon, 26 Mar 2007 14:53:21 -0500

Dear Julio Famiglietti,
Please find your confirmation letter attached in PDF format.  If
you do not already have software to allow viewing and printing of
PDF documents you can download Adobe Acrobat Reader for free at
http://www.adobe.com/products/acrobat/readermain.html. Otherwise,
please find a basic recap of your reservation detail below.

Reservation Confirmation #112868
Julio Famiglietti


Arrival date        Tuesday  March 27, 2007
# of Nights         2
Departure date      Thursday  Mar 29, 2007
Adults/Children     2 / 0


Room Rate Detail
Date                Description       Room      Tax      Total
Tue, Mar 27, 2007   Trvl              $99.00   $16.83   $115.83
Wed, Mar 28, 2007   Trvl              $99.00   $16.83   $115.83


Total Charges       $198.00
Taxes               $33.66
Payments            $0.00
Total Due           $231.66

Full Payment is expected upon check-in.
Please cancel by noon the day prior to your arrival to avoid a
no-show fee of one night's lodging plus tax.
More personal.  More comfortable.  More flexible
More oriented to the needs and wishes of the business traveler.
        >Complimentary Daily Continental Breakfast
        >Complimentary late night Cookies and Milk
        >Complimentary 24 hour Health Club on-site
Thank you for choosing Magnolia Hotel - Houston for your
accommodations.

We look forward to seeing you on: Tuesday  March 27, 2007

--------------------------------------------------

**Attachments**